**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:                          : CIVIL ACTION
                                :
ANN R. WASHINGTON               : NO. 06-CV-1625
                                :
                                : Bankruptcy No. 04-30492
                                : Adversary No. 05-00021


## MEMORANDUM AND ORDER


**JOYNER, J.**                                    **March   15, 2007**


        This matter has been brought before this Court on appeal by
the plaintiff debtor, Ann R. Washington, from the March 13, 2006
Opinion by United States Bankruptcy Judge Steven Raslavich
granting the motion of defendants Mortgage Electronic
Registration Systems, Inc. ("MERS") and Countrywide Home Loans,
Inc. ("Countrywide") for summary judgment on all counts of the
appellant's adversary complaint.  For the reasons which follow,
the appeal shall be denied.

### Factual Background

        Plaintiff filed her adversary complaint commencing this
action in January, 2005, alleging that the defendants had
violated the Truth in Lending Act, 15 U.S.C. §1601, *et. seq.* and
Regulation Z, promulgated thereunder, 12 C.F.R. §226, ("TILA" and
"Reg. Z"), the Pennsylvania Unfair Trade Practices and Consumer
Protection Law, 73 P.S. §201-1, *et. seq.* ("UTPCPL") and Act 6 of

1974, 41 P.S. §101, *et. seq.*, ("Act 6") and that they had breached the contract which they had with her, *to wit*, her mortgage by, *inter alia,* charging her improper and unreasonable attorneys' and other fees, not disclosing a security interest in her personal property, charging her excessive and unauthorized amounts, failing to properly apply her payments against principal and improperly taking a judgment against her.[1]  These claims have their genesis in Plaintiffs' purchase of her home at 3762 N. 18th Street in Philadelphia on September 15, 1983.  Plaintiff financed that purchase by obtaining a $19,000 loan from the Philadelphia Savings Fund Society ("PSFS") in return for which she granted a mortgage and security interest in that property, along with Plaintiff's "appliances, machinery, furniture and equipment (whether fixtures or not)" to PSFS.  It is the non-disclosure of the security interest in the "appliances, machinery, furniture and equipment..." which forms the basis of Ms. Washington's TILA claim.  (Adversary Complaint, ¶s9-11).

Plaintiff's loan was assigned at least five times and defendant MERS is alleged to have become the holder on August 16,

---

[1]  Ms. Washington's complaint also included a claim under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et. seq.*, ("FDCPA") against Goldbeck, McCafferty and McKeever, a law firm employed by the other defendants here to institute and prosecute mortgage foreclosure proceedings against her. As that claim has apparently since been resolved, we see no need to mention either it or the Goldbeck law firm further in this Memorandum Opinion.

1999.  (Adversary Complaint, ¶15).[2]  On February 13, 2004, foreclosure proceedings were commenced against the plaintiff; the mortgage foreclosure complaint alleged that the amount of $11,683.74 was then due and owing on the loan.  (Adversary Complaint, ¶16).  On August 2, 2004, Ms. Washington filed Chapter 13 Bankruptcy proceedings and on January 11, 2005, she filed the instant adversary complaint in an effort to save her home. (Adversary Complaint, ¶29).

<u>**Standard of Review**</u>

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §158(a), which states:

> The district courts of the United States shall have jurisdiction to hear appeals
>
> (1) from final judgments, orders, and decrees;
>
> (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
>
> (3) with leave of the court, from other interlocutory orders and decrees;
>
> and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Under Fed.R.Bankr.P. 8013,

---

[2] Countrywide is alleged to be the servicer on the loan.  (Adversary Complaint, ¶31).

> On an appeal the district court or bankruptcy appellate
> panel may affirm, modify, or reverse a bankruptcy judge's
> judgment, order, or decree or remand with instructions for
> further proceedings.  Findings of fact, whether based on
> oral or documentary evidence, shall not be set aside, unless
> clearly erroneous, and due regard shall be given to the
> opportunity of the bankruptcy court to judge the credibility
> of the witnesses.

In considering such appeals from bankruptcy court decisions, the
district courts are thus required to review the bankruptcy
court's findings of fact for clear error, its legal conclusions
*de novo*, and its exercise of discretion for abuse thereof.  IRS
v. Pransky, 318 F.3d 536, 542 (3d Cir. 2003); Professional
Insurance Management v. Ohio Casualty Group of Insurance
Companies, 285 F.3d 268, 282-283 (3d Cir. 2002); In re Krystal
Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 635 (3d Cir.
1998).   An abuse of discretion can be based on a clearly
erroneous finding of fact, an errant conclusion of law or an
improper application of law to fact.  In re Myers, 334 B.R. 136,
142 (E.D.Pa. 2005), citing In re SGL Carbon Corp., 200 F.3d 154,
159 (3d Cir. 1999).

## Discussion

Generally, in the bankruptcy context, the word "case" is a
term of art which refers to "that which is commenced by the
filing of a petition; it is the whole ball of wax, the Chapter 7,
9, 11, 12 or 13 case."  Blevins Electric v. First American
National Bank, 185 B.R. 250, 253-254 (Bankr.E.D. TN 1995),
quoting 5 COLLIER ON BANKRUPTCY P. 1109.02 (15th ed. 1993).

4

"Adversary proceedings, on the other hand are subactions which are raised within a 'case' and are commenced by the filing of a complaint."  Id., citing, *inter alia*, 2 COLLIER ON BANKRUPTCY P. 301.03 (15th ed. 1994) and Fed.R.Bankr.P. 7003.  Under Fed.R.Bankr.P. 7056, "Rule 56 F.R.Civ.P. applies in adversary proceedings."  In turn, Fed.R.Civ.P. 56(c) states, in relevant part:

> "....The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Summary judgment is thus appropriate where, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000); Jones v. School District of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).  It should be noted that "material" facts are those facts that might affect the outcome of the suit under the substantive law governing the claims made and that an issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" in light of the burdens of proof required by substantive law.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986);  The Philadelphia Musical Society, Local 77 v. American Federation of Musicians of the United States and Canada, 812 F.Supp. 509, 514 (E.D.Pa. 1992).  Hence, a non-moving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial.  Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001).

As noted, in his opinion dated March 13, 2006, Bankruptcy Judge Raslavich granted the motions for summary judgment filed by MERS and Countrywide as to all of the debtor's claims against them in her adversary action.  By this appeal, Ms. Washington only challenges the Bankruptcy Court's rulings granting judgment to the appellees on Counts I and IV of the adversary complaint. We shall address each of these claims *seriatim.*[3]

---

[3]  We note that Appellant-Debtor first argues that the Bankruptcy Court erred as a matter of law in allowing the appellees to raise affirmative defenses for the first time in their motion for summary judgment that were not previously pled in their answer to the adversary complaint.  As the appellant has failed to provide us with a copy of either the answer to the adversary complaint or of the appellees' motion for summary judgment, we are hamstrung in our consideration of the merits of this argument. However, Third Circuit case law is clear that the failure to raise an affirmative defense in a responsive pleading should be viewed in light of the federal policy of liberally allowing amendments if the issue was raised at a pragmatically sufficient time and the plaintiff was not prejudiced in its ability to respond.  Therefore the failure to raise an affirmative defense in a responsive pleading does not always result in waiver.  Paramount Aviation Corp. v. Augusta, 178 F.3d 132, 137 (3d Cir. 1999); Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1373 (3d Cir. 1993); Charpentier v. Godsil, 937 F.2d 859, 863 (3d Cir. 1991).  While not the most appropriate way to raise a previously unpled defense, the Third Circuit has made it clear that it is loathe to deem an affirmative defense waived solely on the basis of its having been raised in a motion for summary judgment.  Eddy v. V.I. Water and Power Authority, 256 F.3d 204, 209 (3d Cir. 2001); Kleinknecht, 989 F.2d at 1374.

1.  <u>Appellant's TILA Claim</u>.

After rejecting several of MERS' and Countrywide's arguments on the issue of their entitlement to summary judgment on Ms. Washington's claim that the original lender's failure to properly disclose the security interest taken in her personal property violated the Truth in Lending Act, Judge Raslavich did grant relief to the appellees on the grounds that, as assignees, they were immune from liability under Section 1641(e) of the Act, because the violation was not apparent from the face of the assigned disclosure documents.  Plaintiff-Appellant now argues that "[a]lthough the Bankruptcy Court correctly stated that the relevant standard for 'apparent on the face of the documents' for transactions secured by real property is §1641(e), it erred as a matter of law in its interpretation of the statutory language." (Appellant's Brief, at p. 13).

It is true that under 15 U.S.C. §1638(a)(9), a creditor is required to disclose that a security interest has been taken in both "the property which is purchased as part of the credit

---

        Here, Plaintiff alleges only that she was "substantial[ly]" prejudiced because "the Bankruptcy Court specifically referred to and relied upon language in the Appellee's pleadings in granting Summary Judgment to Appellee on three of the four Counts based on affirmative defenses." Given that there is no evidence that the Bankruptcy Court's decision would have been any different had it not specifically referred to such language, we cannot find that the plaintiff suffered such prejudice as would justify a denial of a motion for leave to amend.  Thus, assuming that Appellant had provided us with a copy of the appellees' pleadings and motion and that the defenses were not raised in the answer as alleged, we would agree with the Bankruptcy Court's conclusion that they were properly considered for the first time on summary judgment.

transaction, or ... any property not purchased as part of the credit transaction identified by item or type."  It also appears clear in this case that the original mortgagee, PSFS, did not reveal that it was taking a security interest in the plaintiff-appellant's appliances, machinery, furniture and equipment (whether fixtures or not) on the original disclosure statement itself.  15 U.S.C. §1641(e) governs "[l]iability of assignee for consumer credit transactions secured by real property" and states the following:

**(1) In general**

   Except as otherwise specifically provided in this subchapter, any civil action against a creditor for a violation of this subchapter, and any proceeding under section 1607 of this title against a creditor, with respect to a consumer credit transaction secured by real property may be maintained against any assignee of such creditor only if–

      **(A)** the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter; and

      **(B)** the assignment to the assignee was voluntary.

**(2) Violation apparent on the face of the disclosure described**

For the purpose of this section, a violation is apparent on the face of the disclosure statement if–

      **(A)** the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or

      **(B)** the disclosure statement does not use the terms or

format required to be used by this subchapter.

Unfortunately, the statute nowhere defines the meaning of either "disclosure statement" or "disclosure of disbursement" nor does there appear to be any prior case law in this circuit or elsewhere which addresses the threshold issue of whether or not a mortgage is included within the meaning of a "disclosure statement" or "disclosure of disbursement" under 15 U.S.C. §1641. The closest the statute and its implementing regulation come to defining these terms are in the general definitions section of Section 1602(u) and 12 C.F.R. §226.31(b)(1). In this regard, 15 U.S.C. §1602(u) states:

> the term "material disclosures" means the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

In turn, Regulation Z, Subpart E, governing certain home mortgage transactions, 12 C.F.R. §226.31(b)(1) provides in general:

> "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep."

In holding that MERS had no requirement under §1641(e) to compare the debtor's mortgage with the original TILA disclosure statement issued by PSFS, the Bankruptcy Court looked to the

Third Circuit's decision in <u>Ramadan v. Chase Manhattan</u>
<u>Corporation</u>, 229 F.3d 194 (3d Cir. 2000).  In that case, the
plaintiff sued under 15 U.S.C. §1641(a) for the harm which she
allegedly suffered for the deceptive lending practices of a car
dealer.  Specifically, Plaintiff had financed the purchase of a
used Hyundai through a Retail Installment Contract ("RIC") with
the dealer.  That contract was contemporaneously assigned to the
Hyundai Motor Finance Corporation.  At the time the RIC was
assigned, other loan documents were also transmitted, which
plaintiff alleged revealed the true cost of an extended warranty,
the actual amount paid to the issuer and the payment of an
undisclosed finder's fee to the assignee.  Under §1641(a), a
civil action for a TILA violation may be brought against an
assignee of the violating creditor

> "only if the violation for which such action or proceeding
> is brought is apparent on the face of the disclosure
> statement, except where the assignment was involuntary.  For
> the purpose of this section, a violation apparent on the
> face of the disclosure statement includes, but is not
> limited to (1) a disclosure which can be determined to be
> incomplete or inaccurate from the face of the disclosure
> statement or *other documents assigned,* or (2) a disclosure
> which does not use the terms required to be used by this
> subchapter." (Emphasis added)

In affirming the District Court's holding that the plaintiff
could not state a claim under TILA §1641(a) because there was no
"violation on the face of the disclosure document," the Third
Circuit Court of Appeals rejected the plaintiff's assertion that
the related loan documents, including the accounting of

10

distributions made pursuant to the contract should be considered to determine whether a violation was apparent on the face of the disclosure statement.  Noting that Section 1641(a) specifically recited that the inaccuracies had to be apparent from either the disclosure statement itself or the other documents *assigned*, the Court held that a cause of action did not lie on the grounds that the TILA violation could be discerned from the other documents which were merely transferred or transmitted together with the disclosure statement but not formally assigned.

The Third Circuit went further, adopting the reasoning and holdings of the Fifth, Seventh and Eleventh Circuit Courts of Appeals in <u>Green v. Levis Motors, Inc.</u>, 179 F.3d 286 (5th Cir. 1999), <u>Ellis v. GMAC</u>, 160 F.3d 703 (11th Cir. 1998) and <u>Taylor v. Quality Hyundai, Inc.</u>, 150 F.3d 689 (7th Cir. 1998):

> Resort to the "but is not limited to" language in §1641(a) is similarly unavailing.  As noted, our sister circuits have uniformly held that "apparent on the face" means exactly that--for an assignee to be liable under TILA, the violation must be apparent on the face of the assigned disclosure documents.  We agree.  In <u>Taylor</u>, for example, plaintiff asserted the violation at issue was "apparent on the face" because the lender, given its experience in the field, must have known that a violation had occurred... The <u>Taylor</u> Court rejected that argument because "the rule for which the plaintiffs are arguing would impose a duty of inquiry on financial institutions that serve as assignees."  The <u>Taylor</u> Court correctly held that §1641(a) creates no such duty and that "only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA." (Citation omitted)...
>
> As the <u>Green</u>, <u>Ellis</u> and <u>Taylor</u> courts have explained, looking beyond the documents assigned to determine whether a

11

violation was "apparent on the face of the disclosure
statement" is inconsistent with §1641(a)...

Ramadan, 229 F.3d at 198, 199.

In addition to Ramadan, several district courts in this
Circuit have likewise concluded that assignee financial
institutions have no duty to inquire or refer to evidence or
documents extraneous to the disclosure documents in cases where
the alleged violation is not apparent on the face of the
disclosure documents assigned.  See, Jordan v. Chrysler Credit
Corp., 73 F.Supp.2d 469 (D.N.J. 1999).  See Also, McMaster v. CIT
Group, Civ. A. No. 04-339, 2006 U.S. Dist. LEXIS 28831 at *17
(E.D.Pa. May 11, 2006)(allegation that assignee bank could have
been on notice of TILA violations because disbursement of money
to lawyer not in accord with any disclosure to plaintiff in loan
file not strong enough to impose TILA assignee liability on
assignee bank as there were no apparent errors on the face of
loan documents); McNinch v. Mortgage America, Inc., 250 B.R. 848,
860-861 (Bankr. W.D.Pa. 2000)(assignee's duty simply to ensure
that the loan had a matching accurate TILA statement paired with
it, and nothing more).[4]  That the Third Circuit's holdings in
Ramadan apply with equal force to §1641(e) has been held by at
least one other Court in this district.  See, Kane v. Equity One,
Inc., Civ. A. No. 03-3931, 2003 U.S. Dist. LEXIS 23810 at *13,

---

[4]  For some reason not readily apparent to this Court, the McMaster and
McNinch cases were decided under §1641(a) despite the fact that they appeared
to involve consumer credit transactions secured by real property.

12

n.3 (E.D.Pa. Nov. 21, 2003)(rejecting plaintiff's allegations that, through inspection of loan documents, assignee did or should have noticed that gas bill was improperly charged twice on grounds that assignee had no duty of additional inquiry and such violation was not apparent on face of the assigned loan documents).

In support of her appeal in this case, Plaintiff-Appellant argues that the Bankruptcy Judge erred in concluding that MERS had no duty to review the mortgage because under Pennsylvania law, notes and mortgages are interrelated documents that are incorporated into each other; since §1641(e) designates a note as one of the documents to be compared with the disclosure statement to ascertain accuracy and completeness, Plaintiff submits that the failure to review the mortgage here gave rise to a valid TILA claim.

While it is true that notes and mortgages are often interrelated documents which refer to one another, it is also clear that they are separate and distinct documents and that one does not always necessarily accompany the other.  Indeed, a "note" is "an instrument containing an express and absolute promise of signer (*i.e.,* maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time." BLACK'S LAW DICTIONARY 1060 (6th ed.1990).  A mortgage, on the other hand, is "an interest in land created by a written

13

instrument providing security for the performance of a duty or
the payment of a debt." BLACK'S LAW DICTIONARY 1009 (6th ed.
1990). Pennsylvania law recognizes this distinction by requiring
that another action (or in some cases, separate counts in the
same action) must be brought to obtain a judgment for personal
liability separate and apart from that commenced to obtain a
judgment of foreclosure. See, e.g., Meco Realty Company v.
Burns, 414 Pa. 495, 200 A.2d 869 (1964)(recognizing that judgment
entered in action of mortgage foreclosure is judgment against
land only that imposes no personal liability upon mortgagors upon
whom judgment is obtained); Citicorp Mortgage, Inc. v.
Morrisville Hampton Village Realty Limited Partnership, 456 Pa.
Super. 338, 690 A.2d 723 (1997)(same); First Seneca Bank v.
Greenville Distributing Co., 367 Pa. Super. 558, 533 A.2d 157
(1987)(mortgagee may obtain deficiency judgment in mortgage
foreclosure action if mortgagor's complaint requests *in personam*
and *in rem* judgment and if no objection is made by mortgagors);
42 Pa.C.S.A. §8103(Deficiency Judgment Act). However, the note
in this case clearly recites the following:

> Simultaneously with the execution of this Note, the Maker
> has executed and delivered to the Payee a Mortgage secured
> upon certain premises situated in the County of
> Philadelphia, Commonwealth of Pennsylvania, more
> particularly described in the Mortgage. All of the terms,
> covenants, provisions, conditions, stipulations and
> agreements contained in said Mortgage to be kept and
> performed by the Maker hereby made apart of this Note to the
> same extent and with the same force and effect as if they
> were fully set forth herein, and the Maker covenants and

14

agrees to perform the same, or cause the same to be kept and performed, strictly in accordance with the terms and provisions thereof.

Thus, we find that the verbiage of the note in this case takes this matter outside the realm of <u>Ramadan</u> and its progeny, in that by making "[a]ll of the terms, covenants, provisions, conditions, stipulations and agreements contained in [the] Mortgage" a part of the Note itself, a duty was imposed on the assignee here to compare the mortgage with the TILA disclosure statement.  Had the assignee done so, it arguably could have discovered the TILA violation and we therefore find that Judge Raslavich's decision to grant summary judgment to MERS on Count I of the adversary complaint was in error.[5]

2.   <u>Appellant's Breach of Contract Claim</u>.

Appellant next avers that the bankruptcy court erred in finding that her breach of contract claim was barred by the doctrine of *res judicata*.  We disagree.

The gravamen of Appellant's breach of contract claim, which is set forth in Count IV of the adversary complaint, is that Appellant's mortgage is a contract which was breached by MERS and Countrywide's alleged charging of excessive and unauthorized amounts and failing to properly apply payments resulting in damages.  Appellant argues that the second, third and fourth

---

[5]   It is also clear that, under 15 U.S.C. §1541(f)(1), loan servicers such as Countrywide are excluded from TILA's requirements unless they are or were the owners of the obligation.  It does not appear that Appellant is challenging this ruling by the Bankruptcy Court.

elements necessary to a finding of *res judicata* do not exist between her and Appellee MERS.

While federal law has developed its own set of preclusion principles, if the decision allegedly precluding a later action was issued by a state court, then the federal courts must apply the preclusion principles developed by that state. <u>Randall v. Bank One National Association</u>, 2006 Bankr. LEXIS 3696 at *38 (Bankr. E.D.Pa. Nov. 1, 2006), citing <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir. 1988). This derives from the Full Faith and Credit statute, 28 U.S.C. §1738 requiring a court to give the same effect to a judgment that the issuing state would. <u>Id</u>. <u>See Also</u>, <u>Greenway Center, Inc. v. Essex Insurance Co.</u>, 475 F.3d 139 (3d Cir. 2007)("to determine whether Essex is barred by the doctrine of issue preclusion from disputing its liability to defend and indemnify GCI because of the state court order, we must look to the law of the adjudicating state, which is Pennsylvania").

Claim preclusion and issue preclusion are related, but distinct concepts. Whereas claim preclusion prevents a party from re-litigating claims she might have but did not assert in the first action, issue preclusion forecloses only a matter actually litigated and essential to the decision. <u>Hofman v. Pressman Toy Corp.</u>, 193 Fed. Appx. 121, 122 (3d Cir. July 7, 2006). In Pennsylvania, claim preclusion or *res judicata*

provides that where there is a final judgment on the merits,
future litigation between the parties on the same cause of action
is prohibited.  McGill v. Southwark Realty Co., 828 A.2d 430, 435
(Pa.Cmwlth. 2003).   Invocation of the doctrine of *res judicata*
requires that both the former and latter suits possess the
following common elements:

> (1) identity in the thing being sued upon or for;
>
> (2) identity of the cause of action;
>
> (3) identify of the persons and parties to the action; and
>
> (4) identity of the quality or capacity of the parties being
> sued.

Yamula Trucking & Excavating Co. v. Justofin, 771 A.2d 782, 784
(Pa. Super. 2001); Chada v. Chada, 756 A.2d 39, 41 (Pa. Super.
2000).  A default judgment is *res judicata* with regard to
transactions occurring prior to entry of judgment.  McGill,
supra., citing Zimmer v. Zimmer, 457 Pa. 488, 326 A.2d 318 (1974)
and Quaker City Chocolate & Confectionary Co. v. Warnock Building
Association, 347 Pa. 186, 32 A.2d 5 (1943).

In arguing that the second, third and fourth elements were
not satisfied here, Appellant contends that Appellee's claim of
*res judicata* is based solely on its *in rem* mortgage foreclosure
judgment, as it has never exercised its rights to bring an *in
personam* action on the note.  Therefore, according to Appellant,
the only "thing sued upon" was the mortgage and the only
"capacity of the parties" in that action were as "mortgagee" and

"mortgagor."  Since MERS still has, according to Appellant, the opportunity to bring an action on the note, so does the Appellant retain the opportunity to bring a cause of action for breach.

At page 19 of his opinion, Judge Raslavich found that the second and fourth elements were demonstrated because "[t]he same parties appear and in the same capacity.  Likewise, the thing sued upon in both proceedings is the mortgage and note."  In carefully scrutinizing the complaint and default judgment in the mortgage foreclosure action, however, we find that Appellant is correct in her assertions: she was sued solely in her capacity as mortgagor and real owner of the mortgaged property and the only thing sued upon was the mortgage.  We therefore cannot agree with the Bankruptcy Court's findings on this point either and we believe that remand for a re-examination of this issue is appropriate.

For all of the above-stated reasons, we reverse the decision of the Bankruptcy Court and remand this matter to it for all appropriate further proceedings.  An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
IN RE:                         : CIVIL ACTION
                               :
ANN R. WASHINGTON              : NO. 06-CV-1625
                               :
                               : Bankruptcy No. 04-30492
                               : Adversary No. 05-00021
```

**ORDER**

AND NOW, this   15th        day of March, 2007, upon consideration of Plaintiff-Debtor's Appeal from the March 13, 2006 Opinion and Order of the Bankruptcy Court for the United States District Court for the Eastern District of Pennsylvania, it is hereby ORDERED that the Decision rendered therein granting the Defendants' Motion for Summary Judgment is REVERSED for the reasons set forth in the preceding Memorandum Opinion and this matter is REMANDED to the Bankruptcy Court for all appropriate further proceedings.

BY THE COURT:

/s/ J. Curtis Joyner
J. CURTIS JOYNER,        J.

19

20